Good morning, Your Honors. May it please the Court, Nicholas Markey, on behalf of Salvador Benitez-Soriano. As this Court is aware, this is a petition for review from a decision by the Board of Immigration Appeals to sustain the government's appeal from the Immigration Court and enter a voluntary departure order. This matter started with an NTA back in 2012. In 2015, in September, before the immigration judge, the petitioner had requested, number one, a continuance for his I-130 approval, which was denied, and then he proceeded forward on his 589 or asylum application. That was also denied. The immigration judge granted voluntary departure and administrative closure. The government appealed that request to the BIA, and in May of 2017, the BIA overturned the immigration judge's decision, entered a removal order, and then, in the alternative, a voluntary departure order. While this matter has been pending, in January of 2018, the Attorney General issued a matter of casto tum, which states that no judge or the BIA has jurisdictional authority to issue administrative closure. We have submitted a brief on this issue, and I think the main issue in contention is whether the BIA properly overturned the administrative closure decision or not, based on the facts. The Board, as indicated in their decision, I'm not sure. The government maintains in one of their footnotes that the Board interchangeably used adjustment of status and consular processing. The government had argued on appeal to the BIA that Mr. Soriano wasn't eligible for adjustment of status in the United States. He couldn't and, therefore, wasn't eligible for termination, and they wouldn't agree to termination. I think those arguments are misplaced in that it is clear from the record that Mr. Soriano was seeking consular processing down in Mexico, and he was requesting time to file a 601A in the United States to get that approved. Once approved, he could move for recalendering and request termination or voluntary departure. The Board's reliance on this fact that termination wouldn't be agreed to by the government, you don't necessarily have to have them agree to termination. You can always move to ask for termination, and in prior cases I have gotten that over the opposition of the government. That being said, I think the Board didn't apply the facts properly to when they decided that the judge failed to consider all the factors of a vetsian to grant the administrative closure. Now, if you review the immigration judge's decision, he did go through a thorough analysis of matter of vetsian. So I think that the Board ---- What is the error, in your view, that the BIA made? The BIA erred in its premise that we were talking about adjustment of status and termination of proceedings. We're not talking about that. We're talking about consular processing where the individual, after the 601A is approved, goes down to Mexico for permanent residence processing through consular processing. I don't believe that he was eligible here to proceed with adjustment of status. At least there's nothing in the record that indicates that he may have had a prior petition filed in 2001. Now, that may have been there, but that's not something that came up before the immigration judge at the time of the hearing. So that's our position is that they improperly looked at the facts and relied on improper facts for their decision, and therefore it was an abuse of discretion. Additionally, they stated that the judge didn't go through the vetsian factors. The main factor that the Board relied on to say that vetsian was not appropriate is that, number one, they said he could not ---- was not eligible to adjust status. Number two, that the government would not agree to it. And I believe the third reason was the criminal history. Again, we don't know what would happen because the time wasn't given to file the 601A. In prior practices, what would happen is you would either move for a continuance to file the 601A or seek administrative closure, file your 601A, which is the waiver for the illegal presence, and then once it's approved, you would then move to either terminate or the current practices ask for voluntary departure so that you can go down to Ciudad Juarez and do your processing. I take it it's your position that the criminal history, irrespective of the likelihood of the Attorney General agreeing, is not a bar, one R, to processing as you propose? It could be a bar, Your Honor. We never got that far. In this day and age, so for us ---- So that I'm clear in my question. Yes. Let's assume it processed the way you suggested it should, and it got to the Attorney General's decision-making process. Would the petitioner's criminal history prevent the exercise of discretion? It could prevent the exercise of discretion, or at the consulate, they could require a 601 waiver for the additional grounds of inadmissibility. But it would not, the history, your client's history, would not prevent the exercise of discretion, should the government be willing to exercise it? In candor to the Court, given the current administration, I would have to say yes. That's why I prefaced my question with, irrespective of the prospect of success. In the current administration, I believe they would probably at this point deny it because of the criminal history. What effect does it have where you have the government saying that it wouldn't exercise discretion? Well, exercise discretion where? If we're talking about exercising discretion with the 601A, that would be USCIS, not ICE or Department of Justice. If we're saying they wouldn't exercise discretion to grant termination, that could be very well true, but I have views really filed when they say, we're not going to agree to termination. I have filed for termination for the judge to decide it. So where they say, well, we wouldn't have agreed to it, I would have said, fine, don't agree to it. I'm going to file the motion, and if it's denied, I'll take it up from there and continue to fight it. So the reliance of the BIA on this issue of, well, the government said they wouldn't agree to it, and they wouldn't exercise their discretion, I think then it comes to the PIA relinquishing its power for an independent judgment and the immigration judgment to go with the agency decision. And then you have a question of, are they still impartial if they're going to say, well, if you won't exercise discretion, then we won't make the decision? Is your client presently in the United States? He is, Your Honor. There is a stay in this matter. I believe it was granted, so he is still in the United States and married and living in Sunnyside, Washington. Okay? The other issue that I think is on the table is the fact that we do now have ‑‑ your client received voluntary departure, correct? Yes. And is your concern if he were to voluntarily depart and proceed with what you've indicated in terms of consular processing, where would he go, to Tijuana? Ciudad Juarez. Juarez, okay. Right. Why doesn't he do that? Well, he no longer has voluntary departure, Your Honor. So he now has a removal order. He has a removal order is all he has. Right. So then he has a removal order, and he would need a 212 permission to reapply after deportation to come back to the United States. So while this matter was pending, the Attorney General issued Castro Dump. And that essentially, the government maintains, eliminates any decision where they say that the immigration judge and the BIA cannot issue administrative closure. With regards to that case, I'm sure the Court is aware that the Fourth Circuit and Zuniga Romero v. Barr stated that the Attorney General's decision in matter of Castro Dump was not to be afforded deference and that it was incorrect. Now, I would concur with that. What you have is the Attorney General coming in, issuing a decision saying no more administrative closure, a practice that everybody has seen. Well, I should strike that. A practice that has been in existence for a very, very long time. Both immigration practitioners as well as ICE counsel have used administrative closure to resolve cases, waiting for decisions from USCIS, interests of justice, and a respondent could be in jail or might not be available, and things like that. And the Attorney General essentially came and said, we're not going to do that anymore because that fosters delay. We're going to get rid of that procedure and use it only. Did we agree with you? We're kind of right back where we started, though, and that would be really looking at the BIA's decision to reverse, correct? That's correct, Your Honor. Because that would assume that the IJ had the authority to grant it in the first place and that, therefore, the BIA had the authority to make a determination on it. Exactly. And I'm saying that that's where we are. Thank you. Although we have this decision, we're back to, did the immigration judge do the proper decision? And we maintain that he did, and did the Board of Immigration Appeals properly deny it and overturn it? And we're saying, again, that they did not. So given those factors, Your Honor, the fact that the BIA relied, again, on this adjustment of status theory, which really wasn't the theory that was presented, and I would cite to the Respondent's opening brief of the BIA where they maintained, we're not talking adjustment of status here, we're talking consular process. And the fact that they maintained that termination wouldn't be agreed upon, again, those factors aren't, those are factors that shouldn't be relied on because this is a situation where are they then relinquishing their power to decide. The other factor, I believe that they said it would not, I think it was the fifth factor, the outcome was, what was it? I've lost my train of thought. Do you want to save your remaining time? Yes, I will. Two and a half minutes. Thank you. Good morning. May it please the Court, Amy Carmichael for the government. The Board did not abuse its discretion in declining to administratively close Petitioner's case. And at bottom, I think the issue here is that the Court's intervention is not required in order for the Petitioner to obtain the relief that he ultimately seeks. He's looking for consular processing in order to obtain lawful permanent residency or LPR status. In all of these scenarios, the Petitioner is required to obtain a waiver. And in all of these scenarios, the Petitioner is required to depart the United States for Mexico in order to complete that process. The only real difference between the scenarios is when and how he's filing the waivers that are available to him. At present, while he's in the United States under an order of removal, he could file the waivers. He could have filed those waivers while these proceedings were pending. We filed a brief 15 months ago that laid out the procedure for doing that.  The waivers, the 601A waiver is still available to him, notwithstanding the fact that he's under a final order of removal. And had, instead of appealing, he accepted voluntary departure, he would have been required to file the 601 waiver, which is the exact same document. It's just that you file it for Mexico rather than in the United States. Because this Court's intervention isn't really required, I don't think that there's nothing else really to answer. The Board did not ultimately abuse its discretion in declining to administratively close the Petitioner's case because there wasn't anything else for the immigration judge to do. The Board, under the regulations, reviews factual questions for clear error, but it reviews questions of law, discretion, and all other matters de novo. So the Board appropriately reviewed the immigration judge's determination de novo on the question of administrative closure, considered the factors under a matter of abetezian, and concluded that DHS's opposition, which was based in part on the Petitioner's criminal history, the fact that the availability of a waiver would not likely impact his proceedings before the immigration judge, that DHS would not agree to termination in the case, even if the waiver were granted, and that the immigration judge had already held that the Petitioner had already conducted all of the fact-finding required adjudicated all of the issues in the Petitioner's case. I take it it's the government's position that the Petitioner could have sought this waiver at virtually any time, during the IJ proceedings, at the conclusion of the IJ proceedings, while the BIA appeal was pending, after the BIA appeal was rendered, while this petition was pending? Correct. That is correct, Your Honor. And now he's in a situation, if this order is affirmed, that he doesn't have voluntary departure. Is that right? Correct. But even though he doesn't have voluntary departure, he's still not completely precluded from obtaining consular processing. It's just that in addition to the 601 waiver, he would now have to also file for the 212 waiver. The 601 waiver has a higher standard than the 212 waiver because the 601 waiver requires a demonstration of extreme hardship to the U.S. citizen or LPR spouse or parent of the applicant, and that hardship requirement is not part of the 212 waiver. Does the government still have the authority to grant him voluntary departure? Under the regulations, once he has filed an appeal with this Court, that's a withdrawal of the voluntary departure. Could it reinstate it in its discretion? That's an excellent question, Your Honor, and I'm not sure. I'm not sure that historically that's ---- That's above your pay grade, I take it. Indeed. Or below. Not my department. So has the government filed a cert petition in the Romero case? Not to my knowledge. I do not believe so. I do not believe we have sought further review of that case. They issued a stay of the mandate, didn't they, the Fourth Circuit? I'm sorry? Didn't the Fourth Circuit issue a stay of its mandate? I would have to review the docket. I'm sorry. I thought they did on November 6th. That's possible. Okay. I think, though, Your Honor, that it's not required to reach Castro Team in this case. Castro Team wasn't issued until after the Board's decision in this case. Obviously, the Board didn't rely on it. The Board instead looked at the prior matter of abstenteeism factors, and, of course, it's the government's position that Castro Team can't help him. Castro Team is more restrictive than matter of abstenteeism. It limits the Board's discretion and the immigration judge's discretion to grant administrative closure. And because we believe that the Board did not abuse its discretion in declining to administratively close the case, it would be unnecessary to reach any of the questions about matter of Castro Team. Those questions. But if the government takes the position that the IJ and the BIA don't have this authority, are they taking that position in this case? The matter of Castro Team holds that the authority is limited to the situations which are clearly provided for in the regulations, and this would not be one of those situations. So it is our position that, for example, if you remanded the case that matter of Castro Team would be the controlling law at this juncture and that in this case administrative closure is not appropriate under matter of Castro Team, that's clear because the Attorney General withdrew the delegation of authority to the extent it had ever been delegated prior to administratively close cases except as specifically stated in the regulations. Let me just make sure I understand the government's position. And that is that because the BIA didn't rely on Castro Team but instead on the prior case of Adivisian, that the issue set forth in Romero is not on the table? Correct. All right. Thank you. Yes. I mean, the only way that you could possibly reach that question is if you found that the board abused its discretion, in which case we would argue that but now Castro Team would control and so remand would be futile. We can spend a few minutes talking about the appropriateness of Castro Team. Again, I don't think it's necessary to this case. And I would also note that none of those issues have been briefed in this case. The position that the government took in the brief was that it was not before the court and that it was not necessary to reach those issues in order to resolve this case. But to the extent that the court has questions, I'm happy to entertain them. It appears not. All right. Well, otherwise, again, because the process that he seeks to complete, consular processing, does not involve the immigration judge. And because DHS reasonably objected to administrative closure because his likelihood of receiving the waivers that he sought was speculative as they're entirely discretionary, the board not abused its discretion in declining to administratively close this case, unless the court has further questions. Thank you for coming in. Thank you. Thank you. Just briefly, Your Honors, I think I want to clarify that the government maintains that Mr. Benitez could apply for a waiver while these matters were pending. He can't. He's not eligible for a 601 waiver, which would be a 601A, because you can file that in the United States and have it decided here in the United States. But he cannot do that if there is a removal order. And in this case, there is a removal order because it was a removal order when we filed the petition for review. Secondly, the discussion of he can file the waiver down there, that is a 601 waiver, and that is more difficult to get down in Mexico. What Mr. Benitez was requesting was for time to file the 601A here in the United States to see if he could get a decision here. And that's the issue here is if you get the 601A approved here and you go down to Mexico, you have that waiver in place. Now, he may have needed additional waivers for the criminal history down at Consulate, at Ciudad Juarez. They would have said, you're going to need to file a 601. Now, the government could say, well, he had voluntary departure. The voluntary departure was for 30 days. You're not going to get a decision on a 601A from the U.S. CIS in a 30-day period. So to say that he could still seek the waivers here, he can't. At this time, he's precluded and he must file the waivers down in Ciudad Juarez with now an application for permission to reapply to come back in after a removal order. So we're saying that, again, the BIA erred when they revoked the administrative closure based on their beliefs that he could file these waivers here and that there was going to be no agreement to the termination and that it was of no benefit. That's all I have. Thank you. Thank both counsel for your argument this morning. The case just argued, Benito Soriano v. Barr, is submitted and we're adjourned for the morning. Thank you.
judges: Hawkins, McKeown, Pratt